# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

Nos. 98-3655MN, 98-3657MN

_____

|  |  |  |
|---|---|---|
| _____ | * | |
| | * | |
| No. 98-3655MN | * | |
| | * | |
| _____ | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Daryl Valdon Young, | * | |
| | * | |
| Appellant. | * | On Appeal from the United |
| | * | States District Court |
| _____ | * | for the District |
| | * | of Minnesota. |
| No. 98-3657MN | * | |
| _____ | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Eli NMN Perkins, III, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  May 11, 1999

Filed: July 21, 1999

_____

Before RICHARD S. ARNOLD, JOHN R. GIBSON, and BOWMAN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Eli Perkins III and Daryl Valdon Young were convicted of drug offenses after a jury trial.  Both were convicted of possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  Mr. Young was also convicted of conspiracy to distribute and to possess with intent to distribute, as well as aiding and abetting possession with intent to distribute.  He was sentenced to 240 months' imprisonment.  In addition to the count of possession with intent to distribute, Mr. Perkins was convicted of conspiracy to possess with intent to distribute.  He was sentenced to 151 months' imprisonment.  They appeal their convictions, arguing various errors by the District Court.[1]  We affirm.

I.

The events that led to these convictions may be summarized briefly.  After receiving a tip from an informant about drug-dealing activity by Marlon Collins, the appellants' co-defendant, officers of the Minneapolis Police Department arranged for the informant to call Mr. Collins.  The informant asked to purchase two ounces of crack

_____

[1]The Hon. Bruce M. VanSickle, United States District Judge for the District of North Dakota, sitting by designation.

cocaine, and the two arranged to meet at a gas station in Minneapolis at a certain time. The informant accompanied police to the gas station, where surveillance had been established. According to the government, the informant provided a description of Mr. Collins, with whom the police were familiar because of another investigation, described Mr. Collins's source as an African-American man from Chicago who drove a black Lincoln with Illinois license plates, and said that Mr. Collins usually hid drugs behind the dashboard of his vehicle. When Mr. Collins and Mr. Young arrived at the gas station (driving a black Lincoln with Illinois license plates), the informant identified both men, and they were arrested. The car was searched (without a warrant), and two ounces of crack cocaine were found hidden behind the dashboard.

During an interview at the police station, Mr. Young said he was staying at 3854 Bryant Avenue North in Minneapolis, which was identified as Mr. Perkins's residence. During his interview, Mr. Collins said that he and Mr. Young had been at Mr. Perkins's residence, where he had seen a kilogram of crack cocaine. After obtaining a warrant, officers searched the residence, seizing a kilogram of crack, three handguns, scales, and other drug paraphernalia.

## II.

Mr. Young raises a single issue on appeal. He argues that the police did not have probable cause to arrest him. He claims there was no evidence to support the police officers' belief that the information provided by the confidential informant was reliable, and that, in the absence of some evidence that Mr. Young was involved, or about to be involved, in committing a crime, no probable cause existed to arrest him or, the argument goes, to conduct the search of his car that followed.

Mr. Young's argument is based on his claims that the informant originally told the police officers that the suspects would be arriving in a blue Cadillac, or possibly a recreational vehicle, when, in fact, the vehicle was a black Lincoln; that the informant

-3-

identified the vehicle only after it arrived; that Mr. Young was arrested merely because he arrived at the gas station with Mr. Collins; that the officers did not independently verify the informant's statements to determine whether they were reliable; and that there was no basis for the government's claim that the informant had provided reliable information in the past.

We disagree. Although Mr. Young is correct, of course, that mere proximity to someone for whom probable cause exists does not provide probable cause as to another person, there was much more than mere proximity to Mr. Collins to support Mr. Young's arrest. There was the testimony of Jeffrey Jindra, a Minneapolis police officer, that the informant identified Mr. Young, at the scene, as being Mr. Collins's source. While the informant had not previously given a detailed physical description of Mr. Collins's source (only that he was an African-American male), Officer Jindra testified that the informant said that "he knew the source – or had seen him once," and, at the gas station, before the arrests, identified Mr. Young as Mr. Collins's source.

Officer Jindra also testified that the informant told him that Mr. Collins's source drove a black Lincoln with Illinois plates. Officer Jindra testified that the informant "said that Marlon [Collins] drives a blue Cadillac, and then later on told me that his source drives a black Lincoln, and then his source confirmed that the black Lincoln was going to show there." He also testified that the informant told him the black Lincoln "would have Illinois plates on it." While Mr. Young is correct that the record is not clear whether the informant provided this information before or after a car fitting that description arrived on the scene, we believe Officer Jindra's testimony on this point supports the District Court's finding of probable cause. He testified that the informant said he was familiar with the source's car, having seen it before, and that the informant identified the car when it arrived at the gas station. In any event, we need not rely solely upon the identification of the vehicle, because Officer Jindra testified that the informant identified Mr. Young, prior to his arrest, as Mr. Collins's drug source.

-4-

III.

Mr. Perkins's principal arguments on appeal involve two statements made by him that were admitted into evidence over his objection. The statements, which were offered by Mr. Young, not the government, were introduced through the testimony of Officer Jindra and Timothy Lauridsen, another Minneapolis police officer. The first statement was made in response to a question from Officer Lauridsen at Mr. Perkins's house, during the search of the house. Mr. Perkins's girlfriend and their two children were also present. Officer Lauridsen held up a jacket, later determined to contain crack cocaine, and asked to whom it belonged. Mr. Perkins replied that it was his jacket. This statement was made while Mr. Perkins was handcuffed and lying face down on the floor, and, apparently, before he had been advised of his Miranda rights.

Mr. Perkins's second statement, which was testified to by both of the officers, was made at the police station. Mr. Perkins asked what was going to happen to his girlfriend, and was told that she had been taken into custody for narcotics violations. In response, Mr. Perkins said that "[s]he doesn't have nothing to do with it, man. It's all on me."

The admissibility of this second statement may depend upon whether it was made before or after Mr. Perkins invoked his right to counsel. The record on this point is somewhat obscure. At the suppression hearing, the government informed the Magistrate Judge[2] that the "statement did occur after Mr. Perkins had invoked his right to Counsel, and the Government is not seeking to introduce that statement at trial." The government now claims that information was not correct, and that the statement was made after Mr. Perkins was given his Miranda warning but before he invoked his right to counsel. Appellee's Br. at 4. In its brief, the government, in its only reference

_____

[2]The Hon. John M. Mason, United States Magistrate Judge for the District of Minnesota.

to this change of position, argues that "it mistakenly believed the statement had been volunteered after Perkins asked for an attorney," but that "[t]he evidence was uncontradicted that Perkins made the statements after he was advised of his rights, before he requested an attorney, and as part of a conversation initiated by him – not in response to police interrogation." Appellee's Br. at 4 n.2. The government cites nothing in the record to support this claim. In any event, according to the government, it doesn't matter, because Mr. Perkins's statement was part of a conversation initiated by him and was not made in response to police interrogation. On appeal, Mr. Perkins claims that the record on this point is not clear. He argues that he was prepared to litigate the issue, but, because the government agreed not to introduce the statement, the record was never developed fully.

The government suggested at oral argument that its argument to the District Court (that the statement was not obtained illegally) was not inconsistent with what it told the Magistrate Judge (that Mr. Perkins had made the statement after he had invoked his right to counsel). While that may be correct in a technical sense, we think that, at trial, when Mr. Perkins sought to have the statement excluded, it would have been better if the District Court had been aware that the government had taken a different position at the suppression hearing, and that Mr. Perkins had been prepared to litigate the issue, but was not forced to, because the government agreed not to introduce the statement. Certainly Mr. Perkins's counsel could have brought this to the District Court's attention, but we think it was also incumbent upon the government to do so. The statement at the suppression hearing was made to a Magistrate Judge, while a District Judge, who would have no necessary reason to be familiar with the motion-hearing transcript, presided over the trial. We remind government counsel of their special duty to be fully informative to the Court. We leave no implication, however, of bad faith on the part of government counsel.

Mr. Perkins argues that the introduction of the statements denied him a fair trial, and violated his right to due process. He also argues that the District Court erred by

denying his motion for severance. The government argues that it agreed not to offer the statements at trial, did not offer them at trial, and, even after the statements were admitted into evidence, did not rely upon them. For purposes of this appeal, however, we need not decide whether the District Court correctly admitted the two statements, nor whether the Court abused its discretion in denying Mr. Perkins's motion for severance. That is so because the evidence against Mr. Perkins was very strong. See Chapman v. California, 386 U.S. 18 (1967); Milton v. Wainwright, 407 U.S. 371 (1972); Arizona v. Fulminante, 499 U.S. 279 (1991). This issue is related to but distinct from Mr. Perkins's other argument, that the evidence was insufficient as a matter of law to support his conviction. Having read the trial transcript, we hold otherwise.

The government presented its case through the testimony of four police officers, a chemist, and a drug-trafficking expert. In addition to Officers Jeffrey Jindra and Timothy Lauridsen, already mentioned, Officers Richard Gearhard and Jeffrey Binfet testified about the events surrounding the arrest of Mr. Collins and Mr. Young at the gas station, and the search of Mr. Perkins's house. Two ounces of crack cocaine were found in Mr. Young's car, and more than $2,000 in cash was found in Mr. Young's pocket.

On the basis of information provided by Mr. Collins (that he and Mr. Young had been at Mr. Perkins's house within the past 24 hours, and that he had seen a kilogram of crack cocaine there), the officers obtained a search warrant for the house. The officers recovered two packages of crack cocaine, a pager, and two handguns in Mr. Perkins's bedroom. Crack cocaine was also found in a medicine cabinet, in the ceiling of the basement, rolled up in a carpet in the basement, in a children's toy box, and in the pocket of a jacket. The largest amount of crack cocaine found in one place, 974 grams, was found in the basement, in the rolled-up carpet. It was divided into 35 small packages, but was contained in one large outer package. The officer who testified about the seizure of the cocaine from the rolled-up carpet, Officer Lauridsen, estimated

that an ounce of cocaine was contained in each of the 35 packages, and that it was similar to the crack cocaine that was found in Mr. Young's car. Officer Jindra testified that the packaging of the cocaine found in the house was similar to that found in Mr. Young's car. In addition, the chemist testified that the cocaine found in the house was similar in color, texture, and shape to that of the cocaine found in the car.

Also found at Mr. Perkins's house were two scales. One of the scales contained cocaine residue. Two boxes of latex gloves were found. Two cellular telephones were found hidden in the wall of the children's bedroom. The drug-trafficking expert testified that packaging crack cocaine in small, individual quantities is evidence that the drug was intended for distribution, as opposed to personal use. He also testified that pagers, cellular telephones, scales, latex gloves, and handguns are often used by persons involved in the distribution of drugs.

In addition, there was evidence linking Mr. Perkins to Mr. Young and Mr. Collins. As we mentioned, Officer Lauridsen testified that Mr. Collins told the police that he and Mr. Young had been at Mr. Perkins's house within the preceding 24 hours. Officer Lauridsen also testified that a Hollywood Video card with Mr. Perkins's name on it was found in Mr. Young's wallet. Finally, there was the testimony of the chemist and of the officers that the cocaine found in Mr. Perkins's house was similar to the cocaine found in Mr. Young's car.

In order to convict Mr. Perkins of conspiracy, the government was required to prove that he intentionally entered into an agreement with at least one other person for the purpose of distributing crack cocaine. In order to convict him of possession with intent to distribute, the government was required to prove that Mr. Perkins knowingly possessed crack cocaine, and that he intended to distribute it. The evidence presented by the government was very strong, and more than adequately supports the jury's verdict against Mr. Perkins. His house contained a large amount of crack cocaine and many items used in the trafficking of drugs, and there was evidence connecting Mr.

Perkins to Mr. Collins and Mr. Young. The question of guilt or innocence in this case is not a close one. Accordingly, we hold that the testimony about Mr. Perkins's statements did not contribute to the jury's verdict, and that the error in admitting the statements, if it was error, was harmless beyond a reasonable doubt.

## IV.

Accordingly, the convictions are affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.